UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HENRIKA SHILLOW VALLIERE, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-4877 |
| | § | |
| SCHNEIDER NATIONAL CARRIERS, INC., | § | |
| *Defendant.* | § | |

**MEMORANDUM AND ORDER**

Pending before the court is defendant Schneider National Carriers, Inc's. ("Schneider") motion for summary judgment. Dkt. 9. Having considered the motion, the response, and the applicable law, the court is of the opinion that Schneider's motion for summary judgment should be GRANTED.

**I. BACKGROUND**

Willie Valliere ("Valliere") and John Church ("Church") were co-workers employed by Schneider as truck drivers. Dkt. 10 at 1. On November 12, 2009, Valliere and Church engaged in a heated verbal argument inside the cab of their truck, and Church grabbed a knife from the console and repeatedly stabbed Valliere. *Id.* Church immediately ran into the office of his supervisor and stated that he had stabbed Valliere. Dkt. 9 at 2. The supervisor called 911 and then attempted to stabilize Valliere. Dkt. 10 at 1. Valliere later succumbed to his wounds at Memorial Hermann Hospital. *Id.*

Plaintiff filed suit in state court seeking damages from Schneider for wrongful death under Section 408.001 of the Texas Labor Code and Section 41.001 of the Texas Civil Practice and Remedies Code. Dkt. 1 at 8-12. Plaintiff alleges that Schneider was grossly negligent in hiring Church, and in failing to act upon Valliere's complaints concerning Church's behavior. *Id.*

Schneider removed the case to this court on December 7, 2010, on the basis of diversity of citizenship. *Id*. Schneider seeks summary judgment asserting: (1) Texas law requires plaintiff to prove actual malice on its part in order to recover, and there is no evidence of malice; or (2) if, as plaintiff alleges, gross negligence is the proper standard, then there is likewise no evidence to support a finding that Schneider knew of a risk that Church would assault Valliere and failed to act to avoid that risk. Dkt 9. Plaintiff responds first that the motion for summary judgment is premature because she has not yet deposed "the pertinent liability witnesses, including individuals who prepared declarations and affidavits which Defendant is using to support its motion." Dkt. 10 at 3. Plaintiff argues in the alternative that the motion should be denied because Church's criminal background report, along with the "history of on the job tension" with Valliere, are sufficient to raise a dispute of material fact concerning whether Schneider's actions constitute gross negligence. *Id*.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id* . "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell* , 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick*

*James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III. FACTS

Joe Flanagan is an Account Service Manager for Schneider who supervised Church and Valliere, and he provided a declaration in support of Schneider's motion. Dkt. 9-1. Church and Valliere worked together as "team drivers" on a Houston to Memphis route five nights a week from June, 2007 until November, 2009, when Church killed Valliere. *Id*. ¶¶ 2-3. Flanagan knew Church for more than two years prior to the killing, and never observed "any violent behavior or tendencies" and he described Church as "a good employee who was outwardly friendly and talkative. *Id*. ¶ 4. Church was never disciplined or reprimanded during his employment with Schneider prior to his attack on Valliere, and Valliere made no complaints to Flanagan about "threatening, violent or hostile behavior" by Church. *Id*. ¶ 5. Valliere did complain to Flanagan concerning arguments with Church about driving schedules, and about Church smoking outside of the truck. *Id*. ¶ 6. Valliere and Church both complained to Flanagan about "cell phone usage in the truck, and music being played too loudly." *Id*. Flanagan indicated that other work was available to the two men on solo routes or with other partners, but that both Church and Valliere "expressed a willingness to work out any issues between them on their own." *Id*.

Flanagan states further that Schneider has a "strong no-weapons policy," violation of which would be grounds for termination. Dkt. 9-1 ¶8. Flanagan never observed Church or Valliere with a weapon while working, and no one else at Schneider ever reported having seen either of them with a weapon while working. *Id*.

An employment history and criminal background check were obtained by Schneider when Church was hired in April, 2007. Dkt 9-3. Church's prior employment records with another

trucking firm show a "satisfactory" work history for periods of employment from July, 2000 through April, 2001; May through June, 2001; January through May, 2002; and June, 2006 through March, 2007. *Id*. Church reported on a questionnaire in April ,2007 that he tested positive for cocaine in 1997, but had been "clean" since that time. *Id*. at 9.

Church's criminal history contained two prior records. Dkt 9-3, 4-10. The first was a conviction for "vehicle theft" in Miami, Florida in 1987. *Id*. at 7. The second record is a misdemeanor charge of battery that was filed on May 4, 2003, again in Miami, but was later dismissed on January 26, 2004. *Id*. at 7-8. No further details of the criminal charges have been provided by the parties.

Plaintiff testified at her deposition that Valliere often complained to her that Church smelled like smoke when he came back into the truck from his smoke breaks, played music loudly while Valliere was sleeping, and blew the horn or hit the brakes in order to wake Valliere. Dkt 9-2 at 7-8. Plaintiff summarized this behavior as "rude" and "harassing." *Id*. at 8. Valliere told plaintiff that he reported Church's behavior to his superiors, but nothing was done, and Valliere simply quit reporting it after a period of time. *Id*. at 8, 12. Valliere never told plaintiff that Church threatened him, nor did Valliere ever tell plaintiff that he thought Church was going to hurt him. *Id*. at 10. Plaintiff conceded that she "probably had more information" about Valliere's problems with Church than anyone at Schneider, and even so, she never thought Church would try to harm her husband. *Id*. at 12-13. In fact, plaintiff agreed with the assessment offered by Schneider's counsel that in her "wildest imagination" she never thought "there would be a violent outburst where Mr. Church would try to harm" Valliere. *Id*. at 12.

### IV. ANALYSIS

*A.     Governing Texas Standards*

Schneider relies upon section 41.005(c) of the Texas Civil Practices and Remedies Code for the proposition that plaintiff must establish malice on Schneider's part in order to obtain relief.[1] Dkt. 9. Plaintiff asserts that section 408.001 of the Texas Labor Code and section 41.001 of the Texas Civil Practice and Remedies Code apply to her claim, and that she need only establish "gross negligence" on Schneider's part in order to recover damages.[2] Dkt 10. The court need not reach the question of which standard applies, because plaintiff cannot survive summary judgment under either a "gross negligence" or a "malice" standard.

*1.     Gross Negligence*

In Texas, gross negligence "means an act or omission - (i) which, when viewed objectively from the standpoint of [the employer] at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (ii) of which [the employer] had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE §41.001(11). As the Supreme Court of Texas has explained, what "separates ordinary negligence from gross negligence is the defendant's state of mind; in other words, the plaintiff must show that

---

[1] TEX. CIV. PRAC. & REM. CODE §41.005(c)("In an action arising out of a criminal act committed by an employee, the employer may be liable for punitive damages but only if: (1) the principle authorized the doing and the manner of the act; (2) the agent was unfit and the principal acted with malice in employing or retaining him; (3) the agent was employed in a managerial capacity and was acting in the scope of the employment; or (4) the employer or manager of the employer ratified or approved the act.").

[2] TEX. LAB. CODE §408.001(b) ("This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence."). TEX. CIV. PRAC. & REM. CODE §41.001(11) ("'Gross negligence' means an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety or welfare of others.'").

the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Hall v. Diamond Shamrock Refining*, 168 S.W.3d 164, 173 (Tex. 2005). In *Hall*, the plaintiff sued when her husband was killed in an oil rig explosion, and asserted gross negligence in part because the company had experienced a similar explosion 30 years before. *Id.* at 165. The Fifth Circuit noted changes the company implemented after the initial accident and held that, while the nature of the work on an oil rig still involved the *possibility* of explosions, the company was not "consciously indifferent to the risk of explosion" and therefore found that the company had not been grossly negligent. *Id.* at 170.

In this case, there is no prior, similar occurrence that would have put Schneider on notice of a risk that Church would attack a co-worker. And, more specifically, there is simply no evidence, from any source, that Schneider was actually, objectively aware that Valliere was in peril of a deadly assault by Church. The undisputed facts are that Church and Valliere had worked closely together for two years without a single physical confrontation, or even a threat of such a confrontation. Valliere's complaints concerning Church's rudeness and harassing conduct do not change this conclusion. Indeed, plaintiff heard all of Valliere's complaints about his interactions with Church, and her surprised reaction to her husband's murder at Church's hands is a fair reflection of the objective information that was also available to Schneider. Dkt 9-2 at 12. There is nothing in the complaints of rudeness and harassment Valliere made about Church to his wife and to Flanagan that would reasonably lead either of them to believe that Church was likely to harm Valliere. Hence, there is no evidence that would permit a finding that Schneider was objectively aware of an extreme risk of an assault, but nonetheless chose to ignore that risk.

Plaintiff, however, points to Church's personnel file and notes his criminal record of battery, vehicle theft, and cocaine use, and argues that this information, along with Valliere's repeated

7

complaints about Church, should have placed Schneider on notice that Valliere was in danger of an assault. The three pieces of information that Schneider possessed from Church's personnel file do not carry the weight plaintiff suggests, and are not sufficient, even when combined with Valliere's complaints about Church, to make Schneider aware of an extreme risk to Valliere's safety.

First, Church was charged with one count of misdemeanor battery in Florida in 2003, but the charges were later dismissed.[3] The court agrees with plaintiff that this is relevant evidence, available to Schneider at the time of the murder, that would make Schneider aware that Church was capable of physical violence. But, like the possibility of an explosion on an oil rig in *Hall*, there is always a *possibility* that an employee will act violently against a co-worker. That mere possibility, however, is not enough to establish gross negligence. Rather, all of the evidence must be sufficient to give Schneider *actual* knowledge of an "extreme degree of risk" to Valliere in November, 2009, when Church stabbed him to death. *Hall*, 168 S.W.3d at 173. In this respect, Schneider's knowledge of a dismissed, misdemeanor battery charge against Church some six years earlier does nor permit such an inference by a fact finder, particularly since Schneider also knew that Church had never had a physical altercation at work, and that Church and Valliere had worked together for two years with no suggestion that Church was likely to assault Valliere. In short, there is nothing about a six-year-old misdemeanor battery charge that would permit a jury to find that Schneider was actually aware of an "extreme risk" to Valliere at the time of the assault. Therefore, there is no evidence from which a fact-finder could conclude that Schneider was grossly negligent.

---

[3] As noted above, the parties have not provided any details on the allegations underlying the charge. However, at the time of the charged offense, misdemeanor battery under Florida law required only an intentional touching or striking of another person, and did not necessarily involve any bodily harm. § 784.03, Fla. Stat. (1971).

8

The second and third pieces of information contained in Church's personnel file are not even relevant to the issue of Church's dangerousness. Church's twenty-two-year-old (at the time of the assault on Valliere) criminal conviction for auto theft does not suggest a history of violence. Likewise, a single, self-reported incident of Church testing positive for cocaine use twelve years prior to the assault would not make Schneider suspect that Church was a danger to Valliere.

In conclusion, considering all of the information available to Schneider at the time of Church's attack on Valliere, the court finds that plaintiff has not presented evidence that could support a finding that Schneider was actually aware of an extreme risk of harm to Valliere. Therefore, plaintiff cannot carry her burden of establishing gross negligence, and Schneider is entitled to summary judgment.

### 2.  *Malice*

In the alternative, if Schneider is correct that the appropriate standard is whether Church "was unfit and [Schneider] acted with malice in employing or retaining him," the Texas Supreme Court in *Express Pub. Co. v. Wilkins* defined malice as "a wrongful act, done intentionally or with evil intent, without just cause or excuse or as the result of ill will." 218 S.W. 614, 619. Malice clearly requires a higher level of culpable conduct than gross negligence. Because Schneider Carriers cannot be held liable to plaintiff under the standard of gross negligence, it also cannot be held liable under the higher standard of malice.[4]

### B.  *Rule 56(d)*

---

[4]  And, in any event, plaintiff has not argued that she could meet the malice standard if it applies.

Although not denominated as such, plaintiff's assertion that the motion for summary judgment is premature absent further discovery is, in effect, a motion under Rule 56(d), which grants the court discretion to defer ruling on a summary judgment motion and permit additional time for discovery if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). Motions under Rule 56(d) are generally favored and should be liberally granted. *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991)(addressing prior Rule 56(f)). However, plaintiff may not obtain such a deferral of a motion for summary judgment "by the mere assertion that discovery is not yet complete, but must show how the additional discovery will establish a genuine issue of material fact." *Maudlin v. Fiesta Mart*, 114 F.3d 1184, *2 (5th Cir. 1997); *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990); *Leatherman v. Tarrant Cty.*, 28 F.3d 1388, 1396 (5th Cir. 1994).

In *Barksdale v. Union Planters Nat'l Bank*, 175 Fed. Appx. 690, 691 (5th Cir. 2006), plaintiff Barksdale disputed the amount she received in her benefits package upon leaving her former employer. The district court granted summary judgment over the Barksdale's objection that she needed further discovery to respond. The Fifth Circuit found that Barksdale was "required to come forward with actual reasons why she needed additional discovery and how the additional discovery would create a fact issue" and needed to explain "what discovery she did have, why it was inadequate, and what she expected to learn from further discovery." *Id.* The Fifth Circuit affirmed the trial court's denial of the Rule 56(d) motion because Barksdale failed to make any showing of a need for further discovery. *Id.*

Like the plaintiff in *Barksdale*, plaintiff here has not provided any support for her assertion that she requires additional discovery before she can respond to the motion for summary judgment.

10

Plaintiff asserts that she needs to depose people who have provided affidavits and declarations in support of Schneider's motion, but she fails to indicate what information she hopes to discover, or how this additional information would aid her in opposing summary judgment. Resolution of the motion for summary judgment in this case centers upon the information available to Schneider at time of the assault. Church's employment records have been provided, and plaintiff does not indicate that she believes any further information was known by Schneider about Church's background than what is reflected in those records. Further, the reports Valliere made to Schneider through his supervisor Flanagan have been detailed both by Flanagan and by plaintiff, who conceded in her deposition that she "probably had more information about [her] husband's problems with Mr. Church than anyone else." Dkt 9-2 at 12. Plaintiff has simply not identified any further information that she believes would be obtained through additional discovery, nor has she indicated how any such information would create a dispute of material fact in this case. Thus, plaintiff's request to defer ruling on the motion for summary judgment pending further discovery will be interpreted as a motion pursuant to Rule 56(d), and will be denied.

## IV. CONCLUSION

Schneider's motion for summary judgment (Dkt. 9) is GRANTED.

It is SO ORDERED.

Signed at Houston, Texas on July 19, 2011.

_____
Gray H. Miller
United States District Judge

11